# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC., HRB INNOVATIONS, INC., H&R BLOCK ENTERPRISES LLC, HRB TAX GROUP, INC., H&R BLOCK MANAGEMENT, LLC, AND HRB CORPORATE SERVICES LLC,<br><br>   Plaintiffs,<br><br>v.<br><br>INTUIT, INC.<br><br>   Defendant. | Case No. 13-cv-00072-FJG |

## SECOND AMENDED COMPLAINT

Plaintiffs H&R Block Eastern Enterprises, Inc., HRB Innovations, Inc., H&R Block Enterprises LLC, HRB Tax Group, Inc., H&R Block Management, LLC, and HRB Corporate Services LLC (collectively, "Plaintiffs") bring this action against Defendant Intuit, Inc. ("Defendant") based on its false and misleading advertising and for unfair competition. Plaintiffs seek injunctive, compensatory and punitive relief.

## THE PARTIES

1. Plaintiff H&R Block Eastern Enterprises, Inc. is a Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

2. Plaintiff HRB Innovations, Inc. is a Delaware corporation, with its principal place of business located at 2215-B Renaissance Drive, Las Vegas, Nevada 89119, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

1

3.      Plaintiff H&R Block Enterprises LLC is a Missouri limited liability company, with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

4.      Plaintiff HRB Tax Group, Inc. is a Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

5.      Plaintiff H&R Block Management, LLC is a Delaware limited liability company with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

6.      Plaintiff HRB Corporate Services LLC is a Missouri limited liability company with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105, and is a wholly-owned indirect subsidiary of H&R Block, Inc.

7.      Plaintiff H&R Block Management, LLC; Plaintiff HRB Tax Group, Inc., by and through its direct and indirect subsidiaries, including without limitation, Plaintiffs HRB Corporate Services LLC, H&R Block Eastern Enterprises, Inc., HRB Innovations, Inc., and H&R Block Enterprises LLC; together with franchisees (collectively, "H&R Block") operate one of the largest providers of individual income tax preparation services in the United States.

8.      On information and belief, Defendant Intuit, Inc. is a corporation organized under the laws of the State of Delaware with its principal office located at 2700 Coast Avenue, Mountain View, California 94043.  Defendant is registered to do business as a foreign corporation in Missouri, with its registered agent listed as CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101. Defendant is therefore a resident defendant within this District, and, in addition to conducting its advertising campaign described

herein in Missouri, Defendant, on information and belief, transacts substantial business in the State of Missouri, enters into contracts in the State of Missouri, and sells its TurboTax®[1] product (which is the subject of the marketing campaign here at issue) in Missouri and to Missouri consumers.

## INTRODUCTION

9.      H&R Block is one of the world's largest tax services providers—with more than 600 million tax returns prepared by and through H&R Block since 1955.  It now represents roughly one in every seven returns filed in the United States.  For approximately 58 years, H&R Block has prepared tax returns for individuals throughout the country, serving its clients with some of the best tax professionals in the industry.  H&R Block has retail offices within five miles of most Americans, and the average H&R Block client works with a tax professional who has more than eight years of experience and 450 hours of training.

10.     Through the efforts of H&R Block and its personnel—and through the development of extensive marketing plans—the "H&R Block" name, trademark, and trade dress (collectively, the "Mark") have become strong, widely-known and highly-regarded symbols of the H&R Block companies, their goods, services, excellent reputation, and substantial goodwill. This reputation and goodwill is reflected in the number of people who choose H&R Block as their tax services provider.  H&R Block is the owner of numerous United States federal trademark and service mark registrations, including the version set forth below and numerous variations thereof.

---

[1] TurboTax® ("TurboTax") is registered trademark of Intuit, Inc.



11.     H&R Block has spent nearly six decades developing and maintaining the substantial goodwill associated with the Mark.  To protect those interests, H&R Block has federally registered variations of the Mark with the U.S. Patent and Trademark Office.  *See, e.g.*, U.S. Patent and Trademark Office ("PTO") Registration No. 2533014.  (Attached as Ex. A are true and correct copies of printouts from the PTO's Trademark Electronic Search System reflecting (1) 22 live federally-registered marks owned by H&R Block that include the Mark or variations thereon and (2) detailed information regarding Registration No. 2533014.)

12.     H&R Block offers a variety of goods and services in connection with its Mark through its retail offices and digital products.  Not only has H&R Block dedicated over half of a century to building and maintaining the reputation of its Mark, but it also backs up its reputation with the H&R Block Guarantee by providing a 100% guarantee on the accuracy of tax returns prepared by its tax professionals.  As featured on the H&R Block website, the Guarantee reads: "The H&R Block Guarantee is included with every tax return we prepare.  If H&R Block makes an error on your return, we'll pay resulting penalties and interest.  If you are audited, we'll explain your IRS tax audit notice and the documentation you should provide to the auditor."

13.     Defendant Intuit is a competitor of H&R Block and provider of do-it-yourself tax preparation software, branded TurboTax.  Through this product, it allows consumers to complete and file their own tax returns.  Unlike H&R Block, however, Intuit does not maintain any retail

offices in which consumers can receive personal tax advice, or have their tax returns prepared, signed, and filed by an IRS-registered tax preparer.

14.     In or about late January 2013, Defendant launched a new national advertising campaign (the "Campaign") that shamelessly seeks to unfairly promote its TurboTax product by making false, misleading, and baseless comparisons of H&R Block's services and the qualifications of its personnel to Intuit's services and personnel.  Among other things, the Campaign asserts that TurboTax is "trusted" to file more federal returns than H&R Block and all other major retail office tax preparation services combined; that H&R Block hires principally tax preparers with no experience (while suggesting that Intuit does not hire tax advisors with no prior experience); and that H&R Block tax preparers are not experts in tax return preparation, not adequately trained and credentialed, and are merely seasonal employees, while suggesting that Intuit's tax advisors are *not* seasonal employees and are all trained and experienced "real tax experts."

15.     The Campaign originated with two 30-second television commercials, known as "Master Plumber" and "Return Expert."  After the initial showings of those commercials, the Campaign expanded into additional 15-second versions of the television commercials, a television commercial known as "Tax Expert," and related content for use on the internet and social media marketing channels.

16.     As explained in more detail below, Defendant's claims are unsupported and its actions are not innocent.  The Campaign was timed to capture the maximum illegal benefit for Defendant and to inflict the maximum harm on Plaintiffs, having been launched at the outset of the busiest time of the year for tax preparers—the start of the tax season.  And, Plaintiffs are informed and believe that Defendant intends to continue to broadcast the same or similar false

and misleading statements from the Campaign in the 2014 tax season. To the extent consumers are duped by the Campaign and Defendant acquires new customers as a result, H&R Block may not only have lost customers for this past tax season, but it may lose them for future years, as many customers tend to use the same tax preparation method year after year. Defendant broadcast its Campaign throughout the country, and Defendant sells its TurboTax software in Missouri (as well as many other states).

17. Defendant's Campaign is deceptive, false and/or misleading and is likely to confuse, deceive and/or mislead consumers.

18. Defendant's actions constitute violations of the Lanham Act and Missouri common law. Accordingly, Plaintiffs bring this action to recover substantial damages for the harm caused by the Campaign, and for equitable relief prohibiting Defendant from using and benefiting from its false, misleading, and deceptive marketing Campaign.

## JURISDICTION AND VENUE

19. Subject-matter jurisdiction is proper because this is an action for violation of rights granted under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* Specifically, this action is based on Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of Missouri. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. §§ 1116 and 1121, and 28 U.S.C. §§1331 and 1338, for the claims arising under the Lanham Act. Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367.

20. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because (i) the amount in controversy exceeds $75,000, and (ii) the parties are diverse.

21. Venue is proper in the Western District of Missouri under 28 U.S.C. § 1391(a)(2)

because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**ALLEGATIONS COMMON TO ALL COUNTS**

A.      *H&R Block's Valuable Goodwill and Name Recognition*

22.      Founded in 1955, over the past half-century H&R Block has become one of the world's largest tax service companies, with more than 600 million tax returns prepared by and through H&R Block. In fiscal year 2012 alone, H&R Block had revenues of $2.9 billion, and nearly 25.6 million tax returns were prepared by and through H&R Block worldwide, with over 22.3 million being United States tax returns. Through the hard work of its associates, H&R Block has established a strong reputation in the tax preparation industry.

23.      H&R Block's extensive marketing plans have built on its associates' efforts to further increase the consuming public's awareness of, and respect for, H&R Block and its services. H&R Block also has made significant capital investments to develop its brand identification, including through national advertising campaigns, community outreach programs, and other means. For example, H&R Block's total advertising costs of continuing operations for fiscal years 2012, 2011 and 2010 totaled $278.8 million, $243.3 million and $235.9 million, respectively.

24.      H&R Block uses the strong, distinctive and famous Mark in interstate commerce to identify its products and services and to distinguish them from those offered by others. H&R Block's advertisements, which prominently display the Mark, appear in print media, social media, direct mail and out-of-home formats, as well as on radio, television, and the internet. H&R Block also uses the Mark on other public materials, such as letterhead and forms. The H&R Block brand carries over 95% brand awareness in the United States.

7

B.     *Campaign Was Timed To Inflict Maximum Damage.*

25.     The individual income tax preparation business is uniquely time-sensitive, in that it is a seasonal business, with the overwhelming percentage of clients filing their tax returns between mid-to-late January and April 15.  For H&R Block, this means that the vast majority of its annual net tax preparation revenues are earned in this three-month period.  And, in particular, a substantial portion of this revenue is earned during the compressed, peak period from late January through mid-February.  Defendant timed its Campaign to launch at this precise busiest—and most potentially damaging—time of the tax season, in or about late January 2013.

26.     Much of the damage for the 2013 tax season has already been done.  Plaintiffs are informed and believe that Defendant intends to continue to broadcast the same or similar false and misleading statements from the Campaign in the 2014 tax season.  If Defendant follows through on this plan, absent intervention by the Court in the form of injunctive relief, Plaintiffs will suffer substantial and irreparable harm for each day that the Campaign continues to run because a substantial portion of Plaintiffs' annual revenues are earned during the first few weeks of tax season and nearly all of their revenues are earned during tax season.

C.     *Defendant's False and Misleading Campaign.*

27.     As described more fully herein, Defendant's Campaign originated in late January 2013, with the 30-second television commercials known as "Master Plumber" and "Return Expert."  True and correct copies of transcripts of these two television advertisements are attached hereto as Exs. B ("Master Plumber") and C ("Return Expert").  Since "Master Plumber" and "Return Expert" first aired on or about January 21, 2013, versions of these commercials have aired ***thousands*** of times in media markets nationwide, including Kansas City, Missouri, on a broad range of television stations, including CBS, NBC, ABC, ESPN, Bravo, and TBS to name a

8

few.  (*See, e.g.,* Ex. D (Competitrack.com Media Schedule from June 3, 2013).)   In the original

versions of the Master Plumber and Return Expert commercials, the words "H&R Block" appear

and the text is also placed on a background comprised of H&R Block's branded and immediately

recognizable shade of green.  Furthermore, in both commercials, Defendant mentions H&R

Block *by name*, and notably does not mention any other "major tax stores" by name.  It is

indisputable that the Campaign directly targets H&R Block.

      28.     In the original "Master Plumber" commercial, a man and a woman (presumably a

husband and wife) are standing in a kitchen while a plumber in a blue work shirt with the name

"Bob" on it sits on the floor while appearing to be working on the pipes under the sink

(screenshot below).  The following dialog then ensues:



- Presumed Husband:     Hey.

- Presumed Wife:     Hey, honey!

- "Plumber":     Hey, Alan!

- Presumed Husband:     Uh…hey.

9

- "Plumber":                           I'm Bob.  We talked at the tax store; I did your taxes.

- Presumed Husband:              I…I thought you were a tax expert.

- "Plumber":                           Today I'm a master plumber.

29.     In the original "Return Expert" commercial, a woman in a store is standing in front of a mirror holding a grey jacket to her chest, while another woman dressed like a department store sales associate approaches her (screenshot below).  The following dialog then ensues:



- Presumed Sales Associate:     That would be perfect on you, Catherine!

- Presumed Customer:           Have we met?

- Presumed Sales Associate:     Last week at the tax store; I did your taxes!

- Presumed Customer:           You work here, too?

- Presumed Sales Associate:     Yep!

- Presumed Customer: I thought you were an expert with returns?

- Presumed Sales Associate: Oh, I am – especially after the holidays.

30.     In both commercials, after the initial dialog ends, a voiceover intones that "Major tax stores advertise for preparers with no tax experience necessary."  In small type that would not be legible or significant to many consumers, the following text appears:  "Education/experience at tax stores varies.  Major tax store preparers are trained and must meet IRS minimum competency requirements."  The voiceover then continues:  "At TurboTax, you only get answers from CPAs, EAs [Enrolled Agents] or tax attorneys—all real tax experts."

31.     Defendant later produced other 15-second versions of the Master Plumber commercial.  In context, a reasonable consumer viewing any of the versions of the "Master Plumber" and "Return Expert" commercials would understand the foregoing to be asserting that "major tax stores" employ tax preparers to prepare client tax returns on a part-time basis with no tax experience, and who are not "real tax experts."

32.     A few frames later, various versions of "Master Plumber" and "Return Expert" assert in writing and with a voiceover that "More Americans trusted their federal taxes to TurboTax last year," and then just the voiceover continues:  "… than H&R Block stores and all other major tax stores combined."  From the start of this sequence, a tall, red column with the name "TurboTax" on it is present, then with the continued voiceover a shorter column appears that is almost entirely in the distinctive shade of green used in the Mark and bearing the words "H&R Block" (screenshot below).





33.    By naming H&R Block and using the Mark at the time and in the manner used in the "Master Plumber" and "Return Expert" commercials, a reasonable consumer viewing those commercials would understand that the assertions of fact described above about "major tax stores" are actually about H&R Block specifically and in particular.

34.     The Campaign uses multiple versions of the above-described chart and claims, some of which appear with disclaimers, and others of which do not.

35.     In context and as they would be viewed by a reasonable consumer, the representations from the Campaign described above are either literally false or are deceptive and misleading, such that Defendant has no reasonable basis for making these claims.

36.     First, Defendant's suggestion in the misleading Campaign that more U.S. tax returns are prepared using TurboTax products than "H&R Block stores and all other major tax stores combined," which is presented in the Campaign as a supposed representation that Defendant is "more . . . trusted" than H&R Block and other major tax companies combined, is without factual foundation or support.  Defendant's own publicly available records indicate that during their 2012 fiscal year, the number of do-it-yourself tax returns completed through TurboTax was 25.3 million.  (*See* Ex. E (Intuit Fact Sheet for FY12), at p. 2.)  During the same or similar period, however, the number of tax returns completed by or through H&R Block and just two other major tax return preparation companies, Jackson Hewitt and Liberty, was in excess of 26.5 million, a number that obviously surpasses the number of returns Defendant reports for TurboTax in 2012.  (*See* Ex. F (H&R Block 2012 10-K); Ex. G (October 2012 Jackson Hewitt Health Insurance Exchange Toolkit at 3); and Ex. H (JTH Holding 2012 10-K at p. 6).)

37.     Second, upon information and belief, regardless of whether data exist to support the Campaign's assertion that Defendant's product is used by more consumers to prepare their returns than the services of Plaintiffs "and all other major tax stores combined," the data are being reported in a false and misleading manner.  In some versions of the Campaign, including the original "Master Plumber" and "Return Expert" commercials, a small disclaimer that appears while the red and green bar graphs on the screen reads:  "Comparison based on U.S. sales &

industry estimates for **in-store** returns prepared through 4/30/12" (emphasis added). Where the disclaimer fails to appear on the face of the advertisement, Defendant's assertion about the number of federal tax returns filed is literally false. Even where the disclaimer appears, it is intentionally misleading because, *inter alia*, Defendant is excluding the U.S. returns prepared by taxpayers using competing do-it-yourself software products, including a product sold by H&R Block, a particularly egregious exclusion when Defendant only offers a do-it-yourself software product. Defendant excludes the very product and services of H&R Block with which it directly competes and which are the most analogous to Defendant's product. This exclusion not only creates a false and misleading numerical comparison, but it also is premised on the false and misleading proposition that the "assistance" provided by the TurboTax product is equivalent to the full tax return preparation service provided by H&R Block's retail offices. Whereas H&R Block prepares, reviews, and signs its clients' tax returns prepared in its retail offices, Defendant's product does none of those things. On information and belief, neither Defendant nor any of its Enrolled Agents, CPAs or tax attorneys sign clients' tax returns as the preparer of record and, undeniably, the services provided are substantively and materially different. Moreover, and worse still, TurboTax does not prepare any "**in-store**" tax returns as the disclaimer falsely suggests (because Defendant does not have any offices or stores), nor does Defendant's product even "**prepare**" returns—in-store or otherwise. TurboTax is merely software that consumers can use to prepare their own tax returns. To be an accurate comparison of the number of returns that were prepared using TurboTax versus the services of H&R Block, the graphic under which the disclaimer is displayed would have to indicate that in 2012 TurboTax prepared **zero** in-store tax returns while H&R Block prepared many millions.

38.     Third, the Campaign falsely suggests to the average consumer that H&R Block advertises for tax preparers with "no tax experience necessary" and, in context creates the false and misleading impression that H&R Block hires tax preparers who will not have, and do not have, the skills and expertise to competently and accurately prepare, sign and file client tax returns.  In fact, H&R Block's authorized corporate advertisements do not claim that no tax experience is necessary and, to the contrary, clearly provide that any applicant must successfully complete an intensive income tax course or tax knowledge assessment to even prepare a basic tax return.  One such advertisement entitled "Build Your Future at H&R Block" states, "[l]earn to do taxes from the leaders in tax preparation."  (Ex. I.)  That ad states, in part:

> To become an H&R Block Tax Professional, you must first successfully complete the H&R Block Income Tax Course.  In this course, you will learn everything you need to know to prepare basic tax returns.  The course is taught by our best and most experienced Tax Professionals, with convenient locations and class times …" (*Id.*)

39.     Additionally, Defendant's statement is misleading because it sets up a false construct:  Even if that statement were true, which Plaintiffs deny, offering an income tax course to individuals with "no experience" is markedly different from allowing experienced individuals who are actually hired to prepare tax returns for clients.  By the time an H&R Block tax professional is preparing tax returns, she has already undergone intensive training and met the applicable IRS standards.

40.     Fourth, the Campaign creates the false and misleading impression that H&R Block's tax preparers are not well trained, are unskilled, and/or are not "real tax experts."  In fact, the average H&R Block client works with a tax professional with more than eight years of experience and 450 hours of training.  Additionally, H&R Block has a division called The Tax Institute, which draws from the expertise of credentialed tax policy specialists, including CPAs,

Case 4:13-cv-00072-FJG   Document 153   Filed 07/16/13   Page 15 of 21

Enrolled Agents, attorneys, and former IRS agents with years of experience to ensure that H&R Block tax professionals are always up-to-date.

41.     Furthermore, and importantly, in its own disclaimer that appears in versions of the "Master Plumber" and "Return Expert" commercials, Defendant admits "Major tax store preparers are trained and must meet IRS minimum competency requirements."  But a consumer is highly unlikely to read and appreciate that "disclaimer" (flashing briefly on the screen in small print), while someone proclaims in a prominent voiceover that "Major tax stores advertise for preparers with no tax experience necessary."  The false nature of the voiceover cannot be remedied by the contradictory and obscure disclaimer.  The disclaimer is further evidence, however, that Defendant understands that H&R Block tax preparers are in fact trained and certified tax experts, and that Defendant knows its primary message is misleading.

42.     Fifth, the Campaign falsely suggests to a reasonable consumer that, while H&R Block tax professionals are seasonal employees with other jobs, Defendant does not hire tax advisors who are seasonal employees with other jobs.  On information and belief, nearly all of Defendant's tax advisors are seasonal employees with other jobs.  By way of example, consider the following e-mail correspondence from Defendant to an H&R Block tax professional:

**From:** Michelle Czubek [mailto:Michelle_Czubek@intuit.com]
**Sent:** Sunday, January 29, 2012 11:58 PM
**To:** Wasson, Rodney L
**Subject:** It's not too late, TurboTax Advisor job opportunity with Intuit!



We're currently seeking a group of Enrolled Agents and CPAs to support our TurboTax customers, and I wanted to personally reach out to you and encourage you to apply for this position. ==The TurboTax Advisor role is a seasonal, work-from-home position== that provides support and advice to TurboTax customers via

phone, email, and online chat. We provide the equipment and clients, you provide your expertise.

43. The fact that Defendant solicits the very tax return preparers its Campaign falsely portrays as incompetent proves the point that the Campaign is entirely false and misleading. Tax return preparers do not magically become "real tax experts" merely by association with Intuit, and on information and belief, many of the tax advisors Intuit hires have no prior training or experience preparing tax returns. Further, on information and belief, Defendant falsely and deceptively represents the services offered through its so-called "real tax experts."

44. The Campaign is deceptive, false and misleading in many other respects that will be the subject of proof at trial.

45. In order to counteract the effects of Defendant's false and misleading representations contained within its Campaign, and to attempt to dispel any public confusion resulting therefrom, Plaintiffs developed, produced and aired corrective advertisements. In connection with such corrective advertisements, Plaintiffs incurred substantial costs and expenses totaling many millions of dollars.

46. Further, Plaintiffs have sustained additional damages, including without limitation loss of goodwill, as a result of Defendant's false and misleading representations contained within its Campaign.

## COUNT I
## Violation of Section 43(a) of the Lanham Act
## (By All Plaintiffs)

47. Plaintiffs hereby incorporate by reference the above allegations of this Second Amended Complaint as if set forth fully herein.

48. In the Campaign, Defendant engages in unfair competition by promoting its TurboTax product through the use of false, misleading, and deceptive representations of fact

about both H&R Block's sales, services and tax professionals, as well as about TurboTax's sales, products, and tax advisors.

49.    Defendant is using the Mark and running the Campaign in commerce in commercial advertising to promote its TurboTax product.

50.    Defendant's Campaign misrepresents the nature, characteristics and qualities of Defendant's and Plaintiffs' goods, services, and/or commercial activities.

51.    The above described acts and practices constitute violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).  On information and belief, Defendant's conduct was undertaken willfully.

52.    Plaintiffs have suffered damages as alleged herein, including without limitation, the costs incurred in connection with corrective advertising, and loss of goodwill, as a result of Defendant's conduct.

53.    Unless Defendant is enjoined by this Court from continuing to misappropriate Plaintiffs' Mark and to make false, misleading and deceptive representations of fact in its advertising Campaign, the consuming public will continue to be confused and Plaintiffs will suffer a loss of consumer confidence, sales, revenue and goodwill, to the irreparable injury of Plaintiffs.

54.    The nature of the injuries described herein are such that no amount of damages could fully compensate Plaintiffs for the harm they have sustained, or are likely to sustain.  As such, they have no adequate remedy at law, and are entitled to injunctive relief.

### COUNT II
### Violations of Missouri Common Law
### (By All Plaintiffs)

55.    Plaintiffs incorporate herein by reference the above allegations of this Second Amended Complaint as if set forth fully herein.

56.     The above described acts and practices constitute actionable unfair competition under Missouri common law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(a)     issue a preliminary and permanent injunction ordering that Defendant cease and desist, and cause others to cease and desist, from publishing, broadcasting or otherwise disseminating Defendant's Campaign or any portion thereof that is false, misleading or deceptive;

(b)     issue a preliminary and permanent injunction ordering Defendant to issue and pay for appropriate corrective advertisements retracting the misleading marketing or promotional materials identified and to be identified, reasonably designed to reach all people to whom its false and misleading Campaign was disseminated;

(c)     award Plaintiffs:

(i)     Defendant's profits, gains, and advantages derived from Defendant's unlawful conduct;

(ii)     all damages sustained by Plaintiffs by reason of Defendant's unlawful conduct, including all expenditures required to correct the false, misleading, deceptive, and unfair statements in Defendant's Campaign, and for loss of goodwill;

(iii)     additional compensation in such sum as the court shall find to be just pursuant to 15 U.S.C. § 1117;

(iv)     trebled damages pursuant to 15 U.S.C. § 1117;

(v)     exemplary and punitive damages appropriate to punish

Defendant's misconduct and deter any future willful conduct; and

(vi)     interest on the foregoing sums;

(d)     award Plaintiffs' attorneys' fees and costs and disbursements of this

action; and

(e)     grant such other and further relief as the Court deems just and proper.


## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.


DATED:  July 16, 2013                    Respectfully submitted,


**BERKOWITZ OLIVER WILLIAMS SHAW &
EISENBRANDT, LLP**


By:  */s/ Anthony J. Durone*
  Anthony J. Durone (MO Bar #43872)
  David F. Oliver (MO Bar #28065)
  Stacey R. Gilman (MO Bar # 55690)
  2600 Grand Boulevard Suite 1200
  Kansas City, Missouri  64108
  Telephone:  (816) 561-7007
  Facsimile:  (816) 561-1888
  adurone@berkowitzoliver.com
  doliver@berkowitzoliver.com
  sgilman@berkowitzoliver.com

  **O'MELVENY & MYERS LLP**
  Michael G. Yoder (admitted *pro hac vice*)
  Jeffrey A. Barker (admitted *pro hac vice*)
  Adam G. Levine (admitted *pro hac vice*)
  Stephanie L. Noble (admitted *pro hac vice*)
  610 Newport Center Drive, Suite 1700
  Newport Beach, California 92660
  Telephone:  (949) 760-9600

Facsimile: (949) 823-6994
myoder@omm.com
jbarker@omm.com
alevine@omm.com
snoble@omm.com

**ATTORNEYS FOR PLAINTIFFS**